UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ROBERT SCOTT LIPPERT,<br><br>                Plaintiff,<br><br>   v.<br><br>RAMOND CABALLOS-GALENDO;<br>IDAHO STATE CORRECTIONAL<br>CENTER, ISCC; AMANDA GENTRY,<br>a state official at ISCC; JOHN DOE 1,<br>Warden at ISCC; JOHN DOE 2, a state<br>official at ISCC a/k/a SGT. HOST; and<br>JOHN DOE 3, an unidentified state<br>official at ISCC,<br><br>                Defendants. | Case No. 1:21-cv-00149-BLW<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Robert Scott Lippert's Complaint

as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now

reviews the Complaint to determine whether it should be summarily dismissed in whole

or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and

otherwise being fully informed, the Court enters the following Order directing Plaintiff to

file an amended complaint if Plaintiff intends to proceed.

**1.     Initial Matters: Plaintiff's Appeal and Motion for Exigent Judicial Review**

Plaintiff originally filed this action in the United States District Court for the Western District of Washington. *See* Dkt. 1. Concluding that venue appeared improper, a magistrate judge transferred the case to this Court. When the transferring court received Plaintiff's objections, this initial transfer was cancelled, and the case remained in the Western District. *See* Dkt. 4. District Judge Marsha Pechman then rejected Plaintiff's objections and, again, transferred the case to this Court. *See* Dkt. 8.

Before the final transfer order was entered, Plaintiff filed a notice of appeal, and that appeal remains pending. *See* Dkt. 6. After the transfer order was issued and the notice of appeal filed, this Court ordered the conditional filing of Plaintiff's Complaint and granted his application for in forma pauperis status. *See* Dkt. 11, 12.

Plaintiff has now filed a document entitled, "Certification of Plaintiff's (Pro Se) Emergency Motion for Exigent Judicial Review Judicial Notice of Adjudicative Facts Pursuant to Fed. R. Evid. 201(c)(2) as to Lack of Jurisdiction (Re USDC Idaho Quasi-Judicial Order in C.A. No. 21-cv-149." Dkt. 13. In the Motion, Plaintiff asserts that this Court lacks jurisdiction due to the pending appeal.

However, an appeal of an interlocutory, or non-final, order "does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Because Plaintiff's pending appeal in this case challenges the Western District of Washington's transfer order—which this Court will not address—this Court is "not divested of jurisdiction to proceed with the case on the merits." *Id.*

To the extent that Plaintiff seeks an order transferring the case back to the Western District of Washington, the Court declines to do so. Venue is proper in Idaho because the events giving rise to Plaintiff's claims occurred here. Further, it appears that all named Defendants are Idaho residents. *See* 28 U.S.C. § 1391(b). Therefore, Plaintiff's Motion will be denied in large part.

Plaintiff also states in his Motion that he has not received copies of Docket Nos. 1 through 10 in this case. These documents are identical to documents entered in the Western District of Washington and, therefore, are likely in Plaintiff's possession. However, out of an abundance of caution, the Court will nonetheless instruct the Clerk to provide Plaintiff with copies of these documents.

## 2.    Screening Requirement

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 3.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are

insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). A court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim. Finally, if an affirmative defense—such as lack of required state action or immunity from suit—is an "obvious bar to securing relief on the face of the complaint," dismissal under §§ 1915 and 1915A is appropriate. *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

**4.     Factual Allegations**

Plaintiff is a federal prisoner currently confined at FDC SeaTac. The events giving rise to Plaintiff's claims in this action arose while Plaintiff was in the custody of the Idaho Department of Correction ("IDOC") and incarcerated at the Idaho State Correctional Center ("ISCC").

In February 2020, Plaintiff was assaulted by an unidentified inmate and was taken to the hospital. *Compl.*, Dkt. 10, at 2. After returning to the prison, Plaintiff had three physical therapy sessions in the next month. Plaintiff states that the therapy was not

adequate and that the physical therapist advised Plaintiff to "seek out a specialist in the future." *Id*. Prison medical providers evidently did not refer Plaintiff to a specialist.

From March to June 2020, prison officials kept Plaintiff, and perhaps other prisoners, in "lockdown" isolation with three other inmates. It appears that this isolation practice was adopted as part of the State of Idaho's response to the COVID-19 pandemic. *Id*.

In March 2020, Plaintiff began having issues with Defendant Inmate Ramond Caballos-Galendo, one of Plaintiff's cellmates, who engaged in "physical altercations with Plaintiff per intimidation, prison-made weapons, extortion, and harassment." *Id*. Plaintiff states that, sometime in 2020, he told Defendant Gentry about his "problems" with Caballos-Galendo. *Id*. at 3. Plaintiff does not disclose what specifics, if any, Plaintiff provided to Defendant Gentry about the problems he was having with Caballos-Galendo. Plaintiff asked "to be moved to a different cell or unit," but he was not. *Id*.

On March 12, 2020, Caballos-Galendo assaulted Plaintiff "with fists and [a] spray bottle." *Id*. at 2.

In May 2020, "Plaintiff was physically assaulted (i.e. hit via body-push) by an unidentified corrections officer." *Id*. Plaintiff was also assaulted in an unknown manner by another inmate. The attacks "resulted in an emergency health services visit at ISCC." *Id*.

**5.      Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

*A.      Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a

pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### i.    The Complaint Does Not State a Plausible § 1983 Claim

Plaintiff asserts his § 1983 claims under the Eighth Amendment, which prohibits cruel and unusual punishments. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective

standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681

F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*,

744 F.3d 1076 (9th Cir. 2014) (en banc).

To rise to the level of an Eighth Amendment violation, the deprivation alleged

must be objectively sufficiently harmful, *Farmer*, 511 U.S. at 834, or, in other words,

sufficiently "grave" or "serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As the

United States Supreme Court has explained:

> Not every governmental action affecting the interests
> or well-being of a prisoner is subject to Eighth Amendment
> scrutiny, however. After incarceration, only the unnecessary
> and wanton infliction of pain constitutes cruel and unusual
> punishment forbidden by the Eighth Amendment. To be cruel
> and unusual punishment, conduct that does not purport to be
> punishment at all must involve more than ordinary lack of
> due care for the prisoner's interests or safety.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks, citation, and

alteration omitted).

With respect to the subjective prong of an Eighth Amendment claim, a defendant

acts with deliberate indifference only if the defendant (1) was aware of the risk to the

prisoner's health or safety, and (2) deliberately disregarded that risk. *Farmer*, 511 U.S. at

837. "Under this standard, the prison official must not only 'be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists,' but that

person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.

2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware

of the risk, but was not, then the [official] has not violated the Eighth Amendment, no

matter how severe the risk." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

*a)*      *Medical Treatment Claims*

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—

are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Plaintiff offers little detail about his medical condition or treatment. He states that he had three physical therapy appointments, which were not effective, and that he was told that he should seek out a specialist. There is nothing in these allegations to give rise to a reasonable inference that any Defendant deliberately disregarded a known,

substantial risk to Plaintiff's health. Therefore, Plaintiff's Eighth Amendment medical treatment claims are implausible.

*b)     Failure-to-Protect Claims*

Plaintiff also asserts that Defendants failed to protect him from the attack by Caballos-Galendo. Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted).

A "prison official's duty under the Eighth Amendment is to ensure reasonable safety, not absolute safety." *Martinez v. Field*, No. 1:17-CV-00337-DCN, 2020 WL 2576178, at *7 (D. Idaho May 21, 2020) (unpublished) (internal quotation marks omitted). "General fears about being harmed by a fellow inmate or a prison gang are not enough" to establish an Eighth Amendment violation:

> Inmates have no claim under the Eighth Amendment based on a general unsubstantiated fear of assault by a fellow inmate or by a specific group. Otherwise, courts would be flooded with prisoner litigation. Instead, to satisfy *Farmer*, the prisoner must present evidence of a particularized fear based upon prior threats or upon members of a specific group who have the motive and the ability to commit an assault themselves or through intermediaries.

*Id.* at *8; *see Savocchio v. Crabtree*, No. CV-97-1698-ST, 1999 WL 562692, at *5 (D. Or. July 12, 1999) (unpublished) (holding that inmate satisfied burden of showing sufficiently serious deprivation from fears of attack by gang members because petitioner "had long-standing problems with members of [the gang], including a bad drug deal[,] … a contract being placed on his life," and having been identified as a snitch).

Even an obvious danger of attack by another inmate does not result in liability if the official is not subjectively aware of it. However, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.

Here, the Complaint asserts only that Plaintiff informed Defendant Gentry, and perhaps others, about "problems" he was having with his cellmate. However, merely hearing from Plaintiff about unspecified "problems" would not have led any Defendant to draw an inference that Plaintiff was in substantial risk of serious harm from his cellmate. "Problems" could include personality conflicts or mere annoyances and do not necessarily constitute a threat of violence. Without more information about what Plaintiff told Defendants about Caballos-Galendo, the Complaint does not plausibly suggest that any Defendant knew of a substantial risk of serious harm to Plaintiff posed by Caballos-Galendo. As for the inmate who assaulted Plaintiff in May 2020, Plaintiff does not allege that any Defendant was aware of any risk posed by this inmate.

For these reasons, the Complaint does not state a plausible failure-to-protect claim.

c) *Excessive Force Claims*

The Eighth Amendment prohibits prison officials from using excessive force against inmates. "[T]he subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (quoting *Hudson*, 503 U.S. at 6. "This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2003). Therefore, a prisoner asserting an excessive force claim must show "malicious and sadistic force, not merely objectively unreasonable force." *Id*. Because "corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," courts must afford prison staff "wide-ranging deference" in this analysis. *Bearchild*, 947 F.3d at 1140 (internal quotation marks omitted).

Not every "malevolent touch" by a prison guard gives rise to an excessive force claim. *Hudson*, 503 U.S. at 9; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Therefore, in addition to showing that prison officials used force maliciously and sadistically, a prisoner asserting an excessive force claim must "objectively show that he was deprived of something sufficiently serious." *Id*. (internal quotation marks omitted).

A court considers five factors in analyzing whether the objective component has been met: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (internal quotation marks omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (internal quotation marks omitted).

Plaintiff asserts only that an unidentified correctional officer "hit" him "via body-push." These allegations are insufficient to plausibly allege malicious and sadistic force or a sufficiently serious deprivation as to satisfy the objective prong of the analysis. Therefore, the Complaint does not state a plausible excessive force claim.

ii.    Defendants ISCC and Caballos-Galendo

Plaintiff's claims against ISCC and against Caballos-Galendo, the inmate who attacked him in March 2020, are subject to dismissal for additional reasons.

Plaintiff's § 1983 claims against ISCC are implausible because states and state entities are not "persons" subject to suit under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, even if ISCC were a "person" for purposes of § 1983, it would be immune from suit in federal court under the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44

(1979) (holding that § 1983 does not waive state sovereign immunity); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (holding that Idaho itself has not waived state sovereign immunity from constitutional claims).

Plaintiff's claims against Caballos-Galendo are implausible because Caballos-Galendo is not a state actor. Section 1983 provides a remedy for misconduct of a person *acting under color of state law*. It does not provide a remedy for purely private conduct, "no matter how unfair that conduct may be." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988).

A private party can be subject to suit under § 1983 for violating a plaintiff's civil rights only in narrow circumstances. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted).

The Supreme Court has identified several contexts in which a private party can be considered a state actor for purposes of a civil rights action. *Id.* at 296. These include the following situations: (1) the private party's action results from the state's "exercise of coercive power" or "significant encouragement"; (2) the private party participates in "joint activity" with the state; (3) the private party is "controlled by an agency of the State"; (4) the private party "has been delegated a public function by the State"; and (5) the private party is "entwined with governmental policies," or "the government is

entwined in [the private party's] management or control." *Id.* (internal quotation marks omitted). A mere assertion that a private actor conspired with a state actor is insufficient.

It does not appear that any of these situations apply in the context of this case. Unless Plaintiff can plausibly allege that the Defendant Caballos-Galendo was acting under color of state law, he should omit that Defendant from any amended complaint.

### B.     *Other Federal Claims*

Plaintiff also asserts claims under 42 U.S.C. §§ 1985 and 1986. Section 1985 governs conspiracies to interfere with civil rights. To state a claim under § 1985, a plaintiff must allege a racial or class-based discriminatory animus behind the conspirators' actions. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *see also A & A Concrete, Inc. v. White Mountain Apache Tribe*, 676 F.2d 1330, 1333 (9th Cir. 1982). Plaintiff has not alleged that he is a member of a racial group or other protected class against whom a conspiracy was perpetrated, nor has he alleged facts sufficient to support a reasonable inference of a conspiracy. Accordingly, the Complaint fails to state a claim upon which relief can be granted under § 1985.

Section 1986 provides that persons who negligently fail to prevent a wrongful conspiracy as described in § 1985 may be liable to the party injured. A prerequisite to stating a § 1986 claim is stating a § 1985 claim. *West v. County of Will*, 1985 WL 1774 (D. Ill. 1985). Because the Complaint fails to state a plausible § 1985 claim, it also fails to state a plausible § 1986 claim.

### 6.     Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages

Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the

amendment does not comply with Rule 8, this case may be dismissed without further

notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant

knowingly and repeatedly refuses to conform his pleadings to the requirements of the

Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's "Emergency Certification of Plaintiff's (Pro Se) Emergency

Motion for Exigent Judicial Review Judicial Notice of Adjudicative Facts

Pursuant to Fed. R. Evid. 201(c)(2) as to Lack of Jurisdiction (Re USDC

Idaho Quasi-Judicial Order in C.A. No. 21-cv-149" (Dkt. 13) is GRANTED

IN PART, to the extent that the Clerk of Court will forward Plaintiff copies

of Docket Nos. 1 through 10 in this case. This Motion is DENIED in all

other respects.

2.    Plaintiff's "Certification of Petitioner's (Pro Se) Expedited Notice of

Appeal (Dkt. 14), construed as a motion to expedite Plaintiff's pending

appeal, is DENIED. Any such motion must be filed with the court of

appeals.

3.    The Complaint fails to state a claim upon which relief may be granted.

Plaintiff has 60 days within which to file an amended complaint as

described above. If Plaintiff does so, Plaintiff must file (along with the

amended complaint) a Motion to Review the Amended Complaint. If

Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

4. The Clerk of Court will forward Plaintiff a blank copy of this Court's form § 1983 prisoner complaint. Plaintiff is encouraged to use this form when drafting any amended complaint.

DATED: July 12, 2021

B. Lynn Winmill
U.S. District Court Judge

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).